UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

LARRY J. HAWKINS                                                                               PLAINTIFF
ADC #127294

V.                          NO. 5:18CV00274-JM-JTR

DARRYL GOLDEN, Warden,
Delta Regional Unit, ADC;
WENDY KELLY, Director, ADC;
and DEXTER PAYNE,
Assistant Director, ADC                                                                     DEFENDANTS

### RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Moody can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I. Introduction

Plaintiff Larry J. Hawkins ("Hawkins") filed this *pro se* § 1983 action alleging that, while he was a prisoner in the Delta Regional Unit ("DRU") of the Arkansas

Department of Correction ("ADC"), Defendants Warden Darryl Golden ("Golden"), ADC Director Wendy Kelly ("Kelly"), and Assistant Director Dexter Payne ("Payne") violated his constitutional rights. *Doc. 2*.

Defendants have filed a Motion to Dismiss and a Brief in Support. *Docs. 11 & 12*. Although notified of his right to file a Response, Hawkins has not done so. *See Doc. 14*. Thus, the issues are joined and ready for disposition.

The relevant facts, *as pled by Hawkins*, are as follows: [1]

1. In January 2018, when Hawkins entered the ADC, he placed four prisoners on his enemy alert list. *Doc. 2 at 3*.

2. In July 2018, he was incarcerated at the ADC's DRU, where Golden was the warden.

3. On July 2, 2018, Golden transferred Hawkins to the ADC's Tucker Unit. *Doc. 2 at 3; Doc. 4 at 3-4*.

4. One of the inmates on Hawkins's enemy alert list was incarcerated at the Tucker Unit. Before Hawkins arrived at the Tucker Unit, he told non-party Captain Williams, who worked at DRU, that a prisoner at the Tucker Unit was listed

---

[1] To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When resolving a motion to dismiss, the Court must "liberally construe" a prisoner's *pro se* pleadings and may consider documents attached to those pleadings. *Erickson v. Pardus,* 551 U.S. 89, 94 (2009).

Accordingly, the Court has construed Hawkins's *pro se* Complaint (*Doc. 2*) and Exhibits (*Doc. 4)*, together, as constituting his claims.

on his enemy alert list. *Doc. 2 at 3; Doc. 4 at 3-4.*

5. On July 3, 2018, Hawkins was taken back to the DRU. *Doc. 4 at 4.*

6. On September 4, 2018, Golden temporarily transferred Hawkins to the Tucker Unit to attend a "Therapeutic Community" ("TC") program. *Doc. 2 at 3-4; Doc. 4 at 3-4.*

7. Before arriving at the Tucker Unit, Hawkins informed two non-party officers at DRU that a prisoner at the Tucker Unit was listed on his enemy alert list. *Doc. 2 at 3-4.*

8. After a short stay at the Tucker Unit, Hawkins returned to the DRU.[2]

9. Golden, Payne and Kelly rejected Hawkins's grievances complaining that he was transferred, on two separate occasions, to the Tucker Unit, where he had an enemy. *Doc. 2 at 4; Doc. 4 at 3-6.*

10. According to Hawkins, Golden put his life in danger both times that he transferred him to the Tucker Unit. *Doc. 2 at 3-4.*

11. Hawkins has nightmares, his blood pressure goes up and down, and he worries daily that he will again be sent to a unit where his enemies are incarcerated. *Id.*

12. On October 29, 2018, Hawkins initiated this § 1983 action, in which he

---

[2]On September 5, 2018, Hawkins submitted a grievance, *at the DRU,* which would indicate that he had been at the Tucker Unit, at the most, for one day. *Doc. 4 at 3.*

asserts Golden, Payne and Kelly violated his constitutional rights by failing to protect him from being transferred to a unit where an inmate on his enemy alert list is incarcerated. *Doc. 2*.

13.   By way of relief, Hawkins seeks: (a) an injunction preventing "Golden and his staff" from sending him to a unit where any of his enemies are incarcerated; (b) a reprimand to "Golden and his staff" for "putting [his] life in harm's way"; and (c) nominal, compensatory and punitive damages.[3]

## II. Discussion

### A.   Sovereign Immunity

Hawkins has named Defendants in both their individual and official capacities. *Doc. 2 at 2*. Defendants argue that they are entitled to sovereign immunity on the official-capacity claims against them.

The doctrine of sovereign immunity precludes a plaintiff from obtaining monetary damages against state actors named in their official capacities. *See Reid v. Griffin,* 808 F.3d 1191, 1192 (8th Cir. 2015); *Murphy v. Arkansas,* 127 F.3d 750, 754 (8th Cir. 1997) (damages claims against state officials acting in their official capacities are barred "either by the Eleventh Amendment or because in these

---

[3]On November 21, 2018, *after* Hawkins initiated this action, he filed a notice of change of address from the DRU to the Tucker Unit. *Doc. 6*. In that notice, he did *not* indicate that he still feared for his life at the Tucker Unit.

capacities they are not 'persons' for § 1983 purposes"). However, sovereign immunity does not bar a plaintiff from obtaining: (1) monetary damages against state actors named in their individual capacities; or (2) prospective injunctive relief against state actors named in their official capacities. *Murphy,* 127 F.3d at 754.

Hawkins's claims for monetary damages against all Defendants, in their official capacities, should be dismissed, as a matter of law.

While his official-capacity claims against Golden for prospective injunctive relief are *not* barred by sovereign immunity, those claims are now moot because, after Hawkins commenced this action, he was transferred to another ADC unit. *See Doc. 6.* This means, prospectively, Golden is no longer in a position to exercise any authority or control over Hawkins, including protecting him from prisoners on his enemy alert list. *See Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (prisoner's requests for declaratory and injunctive relief were rendered moot by his transfer to another facility because he was no longer subject to the alleged unlawful conditions); *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (prisoner's claims against warden for injunctive and declaratory relief were mooted by his transfer to another facility because such equitable remedies are "unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again").

Accordingly, all of Hawkins's official-capacity claims should be dismissed,

without prejudice.

## B.     Failure to Protect Claim

Defendants argue that they are entitled to dismissal of Hawkins's individual-capacity claims against them because he has failed to state a constitutional claim.

The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to "take reasonable measures to guarantee" inmate safety by protecting them from attacks by other prisoners. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). To establish a viable failure to protect claim, Hawkins must first show that he was "incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834. "This is an objective requirement to ensure the deprivation is a violation of a constitutional right." *Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011) (citation omitted). Second, Hawkins must establish that *each* Defendant was "deliberately indifferent to [his] health or safety." This is a "subjective requirement, mandating the prisoner prove the official both knew of and disregarded an excessive risk to inmate health or safety." *Id.* (citation and internal quotation marks omitted).

Hawkins was *not* attacked, threatened, or physically harmed during the short periods he was at the Tucker Unit in July and September 2018. He was never placed in a cell or barracks with any of his enemies. He simply alleges that he was housed for one or two days at a prison where he had a known enemy, which caused him emotional distress. The Eighth Circuit has held that a plaintiff must assert an "actual

injury" that is greater than *de minimis* to satisfy the objective prong of an Eighth Amendment failure to protect claim. *Irving v. Dormire,* 519 F.3d 441, 446 (8th Cir. 2008); *Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999) (finding that a prisoner failed to state a viable claim because he was not actually harmed by the allegedly inadequate security at a prison); *see Johnson v. Norris*, 3 Fed. Appx. 579, *1 (8th Cir. 2001) (same); *Kellensworth v. Norris*, 221 F.3d 1342, *1 (8th Cir. 2000) (holding that a prisoner failed to state a viable claim because he was not actually harmed by being housed with a prisoner he feared); 42 U.S.C. § 1997e(e) ("No Federal Civil Action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.").

Hawkins has alleged only mental distress – not a physical injury – resulting from his brief and temporary confinement at the Tucker Unit in July and September of 2018. As a matter of law, this is not sufficient to satisfy the objective element for a viable failure to protect claim.

Hawkins also has failed to plead facts sufficient to satisfy the subjective element for stating a viable failure to protect claim, *i.e.,* that each of the Defendants knew of and disregarded a serious risk of harm to his health or safety. In fact, he does not allege that he informed *any of the Defendants* that he had concerns about his safety before being transferred to the Tucker Unit. Furthermore, Hawkins's

temporary placement in the Tucker Unit, for at most one day, to participate in a therapeutic program does not mean that the Defendants did not "take reasonable measures to guarantee [his] safety." *See Farmer,* 511 U.S. at 832. As explained by Golden, in rejecting Hawkins's grievance about the September 2018 transfer: "It is [the program staff's] responsibility, along with the Tucker Unit, to arrange separation between you and your enemies. Once known by Tucker Unit, appropriate action was taken." *Doc. 4 at 4.*[4]

Finally, as to ADC Director Kelly and Assistant Director Payne, neither of them can be held liable under § 1983 by virtue of their supervisory positions. Hawkins has alleged no facts suggesting that either Kelly or Payne had any knowledge of or personal involvement in the decisions to temporarily transfer him to the Tucker Unit. *See Iqbal,* 556 U.S. at 676 (holding that "vicarious liability is inapplicable to … § 1983 suits"); *Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006) ("To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights."). "[G]eneral responsibility for supervising the operations of a prison" is insufficient to establish personal involvement. *Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir. 2007).

---

[4]Hawkins apparently was placed in an isolation cell while at the Tucker Unit. *See Doc. 4 at 3.*

Because the facts, *as pled by Hawkins,* do not establish a viable failure to protect claim, Defendants' Motion to Dismiss should be granted, and this § 1983 action should be dismissed in its entirety, without prejudice.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' Motion to Dismiss *(Doc. 11)* be GRANTED.

2. Hawkins's Complaint (*Doc. 2*) be DISMISSED, WITHOUT PREJUDICE.

3. The dismissal of this case be counted as a "STRIKE," pursuant to 28 U.S.C. § 1915(g).

DATED this 8th day of August, 2019.

*/s/ J. Thomas Ray*
_____
UNITED STATES MAGISTRATE JUDGE